Joseph Balaschak, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

314 

Argued September 15, 1978, before Judges MENCER, BLATT and MACPHAIL, sitting as a panel of three.

*John Stember,* for petitioner.

*Reese F. Couch,* Assistant Attorney General, with him *Gerald Gornish,* Attorney General, for respondent.

OPINION BY JUDGE MENCER, December 19, 1978:

Joseph Balaschak (claimant) appeals a denial of benefits by the Unemployment Compensation Board of Review (Board). The Board found, pursuant to Section 402(e) of the Unemployment Compensation

Law (Act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e), that claimant was discharged because of willful misconduct.[1] We reverse.

Claimant was employed by Pittsburgh Die and Casting Company for over three years prior to his discharge. In May of 1976, the claimant's steel toed safety shoes, which he was required to wear by company rule, were destroyed in an industrial accident. Claimant purchased ordinary work shoes with the intention of having a steel toe inserted. Claimant's supervisor discovered he was not wearing proper shoes and warned him to either obtain safety shoes or be discharged. The next working day claimant wore an old pair of safety shoes that he had at home but which were small for his feet.

On July 1, 1976, claimant, to rest his feet while at lunch, took off his ill-fitting safety shoes in the plant locker room and put on his nonsafety shoes. He then walked to the lunch room. On the way back to his locker, claimant's supervisor again observed claimant without safety shoes. He stopped claimant, intending to suspend him for two weeks without pay. The supervisor, however, discharged claimant after claimant stated that the supervisor was not wearing safety shoes and should also be required to do so.

The Bureau of Unemployment Security denied claimant's application for benefits under Section 402 (e) of the Act and the referee affirmed. The Board affirmed and this appeal followed.

---

[1] Willful misconduct, although not legislatively defined, has been defined in numerous decisions by this Court to include a deliberate violation of a company rule. *See, e.g., Thompson v. Unemployment Compensation Board of Review*, 28 Pa. Commonwealth Ct. 591, 368 A.2d 1386 (1977); *Nyzio v. Lee Tire & Rubber Co.*, 26 Pa. Commonwealth Ct. 600, 364 A.2d 981 (1976); *Fields v. Unemployment Compensation Board of Review*, 7 Pa. Commonwealth Ct. 200, 300 A.2d 310 (1973).

The claimant contends that the following findings are not supported by substantial evidence:

3. The employer required all employees to wear safety-toed shoes *at all times inside the plant area* but the employees were allowed to remove same when they were in the lunch room area.

4. On July 1, 1976 the employer again noticed claimant *in the plant area* without his safety shoes. . . . (Emphasis added.)

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rabinowitz v. Unemployment Compensation Board of Review*, 15 Pa. Commonwealth Ct. 51, 55, 324 A.2d 825, 827-28 (1974). The record in this case does not contain such evidence.

Although the supervisor initially claimed safety shoes must be worn in the entire plant area, he immediately explained the rule to apply to those employees who were working in the plant or in work areas. He also stated that the lunch room was a nonworking area, but he did not indicate it was the only such area. The Board, however, in reaching its findings apparently equated the term "work area" with "plant area" and assumed that, outside of the lunch room, the rest of the plant was a work area. The testimony simply does not support such conclusions.

Since it is undisputed that claimant was not working at the time he was observed, the only issue is whether he was without his shoes in a work area. The only evidence on this issue is an unequivocal statement by the claimant that the area where he was stopped was not a working area. Moreover, the fact that the supervisor himself was not wearing safety shoes at the time of the incident suggests how he characterized the area for his own personal safety. Since the employer has the burden of proving willful misconduct,

*Unemployment Compensation Board of Review v. Atlantic Richfield Co.*, 22 Pa. Commonwealth Ct. 511, 349 A.2d 496 (1975), it is incumbent on him to produce the necessary evidence to establish an infraction of his rules.

Finally, the employer contends that, even if the claimant did not violate the safety-shoe rule, claimant's remark to his supervisor, by itself, constitutes willful misconduct. It has been held that the use of offensive or vulgar language to a supervisor can be willful misconduct. *Fields, supra* note 1; *Miller Unemployment Compensation Case,* 196 Pa. Superior Ct. 393, 175 A.2d 119 (1961). If the remark, however, is provoked or de minimis, a claimant will not be denied benefits. *Unemployment Compensation Board of Review v. Boff,* 24 Pa. Commonwealth Ct. 571, 357 A.2d 694 (1976); *Horace W. Longacre, Inc. v. Unemployment Compensation Board of Review,* 12 Pa. Commonwealth Ct. 176, 316 A.2d 110 (1974). While this Court does not sanction insubordinate statements by employees, claimant's remark that the supervisor also was not wearing safety shoes and should also be required to do so can hardly be compared with other vulgar or threatening language disapproved by this Court. *See. e.g., Costa v. Unemployment Compensation Board of Review,* 31 Pa. Commonwealth Ct. 7, 374 A.2d 1012 (1977); *Unemployment Compensation Board of Review v. Tumolo,* 25 Pa. Commonwealth Ct. 264, 360 A.2d 763 (1976); *Wilson v. Unemployment Compensation Board of Review,* 15 Pa. Commonwealth Ct. 314, 325 A.2d 500 (1974).

### ORDER

AND Now, this 19th day of December, 1978, the order of the Unemployment Compensation Board of Review in the above captioned case, dated March 21, 1977, is hereby reversed and the case remanded for a computation of benefits.