# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Hartnett,                   :
             Petitioner       :
                               :
       v.                      : No. 191 C.D. 2018
                               : SUBMITTED: July 13, 2018
Unemployment Compensation   :
Board of Review,               :
             Respondent    :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                          FILED: August 23, 2018

Mark Hartnett (Claimant) petitions for review, *pro se*, of the December 4, 2017 Order of the Unemployment Compensation Board of Review (Board), finding Claimant ineligible for benefits under Section 402(b) of the Unemployment Compensation Law (Law)[1] and establishing a non-fault overpayment of $3,072 under Section 804(b)(1) of the Law.[2] We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) of the Law provides that an employee is ineligible for compensation for any week in which his or her unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.

[2] 43 P.S. § 874(b)(1). Section 804(b)(1) of the Law provides that a claimant who, through no fault of his or her own, receives benefits to which he or she is not entitled, shall have those amounts deducted from any future unemployment compensation.

**Background**

Claimant worked as a truck driver for M&C Trucking (Employer) from December 10, 2015 until May 12, 2017.[3] Certified Record (C.R.), Item No. 2, Employer Separation Information, at 3. One requirement of Claimant's employment was that all of Employer's equipment be parked in Employer's yard on weekends for maintenance. Notes of Testimony (N.T.), 8/28/17, at 16.

In February 2017, Claimant contacted Employer's owner, John Muchesko, and said he was considering a move to New Jersey. *Id.*, at 16-17. Claimant asked Mr. Muchesko if he could park Employer's truck at his home in New Jersey on the weekends, rather than on Employer's property. *Id.* at 17. Mr. Muchesko denied this request, as all vehicle maintenance was performed in Employer's yard on the weekends. *Id.* at 16-17.

Claimant moved from Johnstown, Pennsylvania to Oaklyn, New Jersey in April 2017. *Id.* at 1, 6. On April 29, 2017, Claimant notified Mr. Muchesko that he had relocated to New Jersey. *Id.* at 6. Mr. Muchesko asked Claimant if he was quitting, and Claimant stated he would continue working for Employer until he found a new job. *Id.* at 17. Claimant worked through May 12, 2017, but failed to call Employer thereafter for future work. *Id.* at 18.

On May 15, 2017, Claimant filed a claim for unemployment compensation (UC) benefits. C.R., Item No. 1, Claim Record, at 2. Claimant alleged that he was forced to leave his job and did not want to quit. C.R., Item No. 3, Claimant's Separation Information, at 1. Claimant cited his inability to park Employer's truck

---

[3] Before his most recent employment, Claimant worked for Employer for approximately 12 years. Notes of Testimony (N.T.), 8/28/17, at 16. Claimant's two periods of employment were interrupted by a 10-year prison sentence, which Claimant served for reasons not specified in the record. *Id.* Claimant is required to attend weekly counseling sessions as a result of his criminal conviction. *Id.* at 11.

in New Jersey as a factor in his separation. *Id.* Claimant also alleged that Employer told him he would have to quit if he moved to New Jersey. *Id.*[4] In its response, Employer stated that Claimant voluntarily quit to move to New Jersey and gave no notice before moving. C.R., Item No. 2, Employer's Separation Information, at 4.

The Department of Labor and Industry (Department) mailed Claimant three Notices of Determination on July 18, 2017. C.R., Item No. 6, Notices of Determination, at 1. The first Notice stated that Claimant was ineligible for UC benefits under Section 402(b) of the Law because he voluntarily quit his employment without a necessitous and compelling reason. *Id.* The second Notice stated that Claimant had received $3,072 in unemployment compensation benefits to which he was not entitled and assessed a fault overpayment against Claimant under Section 804(a) of the Law.[5] *Id.* at 4. The third Notice assessed a $460.80 penalty against Claimant under Section 801(c) of the Law[6] for knowingly making a false statement when applying for benefits. *Id.* at 6. Claimant was also assessed 11 penalty weeks under Section 801(b) of the Law.[7] *Id.*

---

[4] The record does not contain Claimant's initial internet claim. In his separation information, Claimant stated that he was "forced to leave" his job. Certified Record, Item No. 3, Claimant's Separation Information, at 1. Claimant did not cite "lack of work" as the reason for his unemployment.

[5] 43 P.S. § 874(a). Section 804(a) of the Law provides that a claimant, who by reason of his or her own fault receives benefits to which he or she is not entitled, shall be liable to repay those amounts.

[6] 43 P.S. § 871(c). Section 801(c) of the Law provides that a claimant who makes a false statement to obtain or increase unemployment compensation benefits shall be assessed a penalty in the amount of 15% of the compensation paid.

[7] 43 P.S. § 871(b). Section 801(b) of the Law provides that a claimant who makes a false statement to obtain or increase unemployment compensation benefits may be disqualified from receiving future benefits.

3

Claimant appealed to the Referee, who held a hearing on August 28, 2017. Claimant testified on his own behalf and presented the testimony of Sandra Khalil, his patient advocate.[8] Mr. Muchesko testified on behalf of Employer.

Claimant testified that he never informed Employer that he wanted to quit. N.T., 8/28/17, at 6. Instead, Claimant was "let go" because he could not work out an agreement with Mr. Muchesko and remain with Employer if he continued to live in New Jersey. *Id*. Claimant testified that he moved to New Jersey because he "couldn't be in the same town" with his ex-wife, and he "just didn't want to be around there on the weekends." *Id.* at 14.

Ms. Khalil testified that after Claimant moved to New Jersey, she had a conversation with Mr. Muchesko and Claimant, during which Claimant discussed his future employment. *Id.* at 8. Ms. Khalil testified that Claimant was hoping for an arrangement where he could be assigned routes in the northeast. *Id.* at 9. Ms. Khalil testified that Claimant "pleaded" with Mr. Muchesko on the phone because he wanted to continue working for Employer, but Mr. Muchesko "refused to work with [Claimant]." *Id*.

With regard to Claimant's move to New Jersey, Ms. Khalil testified that "it was an awkward situation living in the same town that his [ex-]wife was living in," and it was uncomfortable for Claimant to see her at the grocery store. *Id.* at 9, 12. Ms. Khalil opined, "[I]t was easier for him to just move." *Id.* at 12. Ms. Khalil testified that Claimant was not legally prohibited from living near his ex-wife, and their divorce took place several years earlier. *Id*. at 9. Claimant attended mandatory

---

[8] Claimant has a speech impediment and learning disability. N.T., 8/28/17, at 2. Ms. Khalil assists Claimant with verbal communication and frequently participates in "critical calls" with Claimant due to issues related to his speech impediment. *Id.* at 8.

counseling sessions[9] in Pennsylvania and was in the process of obtaining counseling in New Jersey. *Id.* at13. Although no restrictions were placed on where Claimant could receive counseling, Ms. Khalil opined that counseling is "a little more flexible in New Jersey than it is in [Pennsylvania]." *Id.*

Mr. Muchesko testified that when Claimant returned to work for Employer in December 2015, Employer notified Claimant that all equipment must be parked in Employer's yard on the weekends. *Id.* at 16. During a telephone conversation with Claimant on April 29, 2017, Claimant notified Mr. Muchesko that he had moved to New Jersey. *Id.* at 17. When Mr. Muchesko asked Claimant if he intended to quit, Claimant stated that he would continue to work for Employer until he found a new job. *Id.* As a result, Mr. Muchesko scheduled Claimant for work for the following week. *Id.* On May 12, 2017, another employee notified Mr. Muchesko that Claimant had quit. *Id.* While Mr. Muchesko acknowledged that Claimant did not relay this information personally, Claimant did not contact Employer for work after May 12, 2017. *Id.* at 18. Mr. Muchesko stated Claimant was a good employee and he would have preferred Claimant continue working for him. *Id.* at 19.

On September 1, 2017, the Referee affirmed the Department's determination that Claimant was ineligible for benefits because Claimant voluntarily quit without a necessitous and compelling reason. C.R., Item No. 15, Referee's Decision, at 4. The Referee resolved the conflicts in the testimony in Employer's favor and credited Mr. Muchesko's testimony. *Id.* at 3. The Referee found that Claimant's reasons for moving to New Jersey were personal and that Employer was not obligated to accommodate Claimant's request to park Employer's truck in New Jersey on the weekends. *Id.* at 3-4. The Referee concluded, however, that Claimant did not

---

[9] The Referee asked a few questions about the "mandatory counseling" which was related to "some issue [Claimant] had with the Penal system in the State of Pennsylvania." N.T., 8/28/17, at 11. The record offered no further insight into this issue.

knowingly misclassify his separation and, thus, a non-fault overpayment was more appropriate. *Id.* at 4. The Referee also declined to assess penalties under Section 801 of the Law. *Id.* at 5.

Claimant appealed to the Board, which made its own findings of fact and conclusions of law. The Board also resolved the conflicts in the witnesses' testimony in Employer's favor. C.R., Item No. 20, Board's Decision and Order, at 2. The Board found that Claimant notified Employer on April 29, 2017 that he had relocated to New Jersey. *Id.*, Finding of Fact (F.F.) No. 8. Employer asked Claimant if he was quitting, and Claimant responded that he would work until he found a new job. *Id.*, F.F. No. 9. However, Claimant did not request work after May 12, 2017. *Id.*, F.F. No. 10. The Board concluded Claimant's move to New Jersey was a personal decision that caused him to terminate his employment. *Id.*, at 2. As such, the Board concluded Claimant was ineligible for benefits under Section 402(b) of the Law because he voluntarily left work without cause of a necessitous and compelling nature and affirmed the Referee's decision. *Id.* This appeal followed.[10]

## Issues

On appeal, Claimant argues the Board erred in determining that Claimant voluntarily quit his job and that he failed to demonstrate a necessitous and compelling reason to quit employment.[11]

---

[10] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the necessary factual findings are supported by substantial evidence. *Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

[11] Claimant has not challenged the Board's conclusion that a non-fault overpayment of $3,072 is established under Section 804(b)(1) of the Law. 43 P.S. § 874(b)(1).

6

## Discussion

Claimant first argues that the evidence establishes that he did not quit, but rather was discharged by Employer. The essence of Claimant's argument is that the Board should have credited his testimony rather than that of Mr. Muchesko.

It is well established that the Board is the ultimate fact-finder in UC matters and is empowered to resolve all conflicts in the evidence and to determine witness credibility and the weight accorded to the evidence. *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). In making credibility determinations, the Board may accept or reject the testimony of any witness in whole or in part. *McCarthy v. Unemployment Comp. Bd. of Review*, 829 A.2d 1266, 1270 (Pa. Cmwlth. 2003). The Board's findings of fact are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. Cmwlth. 1977).

Here, a conflict existed between the testimony of Claimant, who claimed he was terminated because he moved to New Jersey, and Mr. Muchesko, who claimed that Claimant quit by failing to contact Employer after May 12, 2017. The Board resolved this conflict in Employer's favor and determined that Claimant quit his employment. C.R., Item No. 20, Board's Decision and Order, at 2.

We conclude that the record contains substantial evidence to support the Board's findings. In February 2017, Claimant told Mr. Muchesko he was considering a move to New Jersey and asked if he could park Employer's equipment there. Mr. Muchesko stated it was not permitted. Claimant moved to New Jersey in April 2017. On April 29, 2017, after notifying Employer of his relocation, Claimant stated he would continue to work until he found a new job. Claimant worked for Employer until May 12, 2017, but thereafter made no further effort to continue his

7

employment. We agree with the Board's determination that Claimant voluntarily left his employment. *See Check v. Unemployment Comp. Bd. of Review*, 423 A.2d 1140, 1141 (Pa. Cmwlth. 1981) ("When a claimant's conduct is not consistent with a desire to remain employed, we have held in the past that [the claimant] has, in effect, voluntarily left his employment.").

Next, Claimant argues that the Board erred in concluding that he failed to establish a necessitous and compelling reason to terminate his employment.

The claimant has the burden of proving he or she had a necessitous and compelling cause for terminating his or her employment. *St. Clair Hosp. v. Unemployment Comp. Bd. of Review*, 154 A.3d 401, 404 (Pa. Cmwlth. 2017). A necessitous and compelling cause is one that "results from circumstances which produce pressure to terminate employment that [are] both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Taylor*, 378 A.2d at 832-833. However, a claimant's personal preference is not a necessary or compelling reason to voluntarily quit employment. *Procito v. Unemployment Comp. Bd. of Review,* 945 A.2d 261, 265 (Pa. Cmwlth. 2008).

In his brief to this Court, Claimant asserts, for the first time, that he had no choice but to move to New Jersey because his counseling needs had changed and his health needs made it impossible to live in the same town as his ex-wife.[12] Claimant maintains a reasonable person would have accommodated those needs by relocating and he acted with ordinary common sense. We disagree.

The testimony establishes that Claimant moved to New Jersey because he did not wish to live in the same town as his ex-wife. Claimant was not legally prohibited from living near his ex-wife, and their relationship had terminated several years

---

[12] On appeal, this Court may not consider any evidence that is not part of the certified record. *Umedman v. Unemployment Comp. Bd. of Review*, 52 A.3d 558, 564 (Pa. Cmwlth. 2012).

earlier. While contact with his ex-wife may have been unpleasant or upsetting to Claimant, there is no support in the record for Claimant's assertion that such occasional contact constituted a "real and substantial" circumstance that produced pressure on Claimant to terminate his employment. Beyond a single reference that Claimant had seen his ex-wife at the grocery store, the record is bereft of evidence establishing the frequency of their contacts or what transpired during those encounters.

Moreover, there is no evidence indicating that Claimant was compelled to relocate to New Jersey. With regard to Claimant's health needs, it is unclear from Claimant's brief whether those needs relate to his speech impediment, his learning disability, or some other undisclosed medical issue. Regardless, Claimant did not testify that his health needs were the impetus for his relocation to New Jersey. Aside from Ms. Khalil's testimony that counseling in New Jersey was "a little more flexible" and that "it was easier for him to just move," N.T., 8/28/17, at 12-13, there is no evidence that Claimant was unable to secure the required counseling in Pennsylvania or that Claimant was somehow better served in New Jersey.

We find no error in the Board's conclusion that Claimant's decision to move to New Jersey was an entirely personal choice, and, consequently, Claimant voluntarily quit his employment without a necessitous and compelling reason. Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Hartnett,                :
             Petitioner      :
                           :
       v.              : No. 191 C.D. 2018
                           :
Unemployment Compensation  :
Board of Review,           :
            Respondent    :

## O R D E R

AND NOW, this 23rd day of August, 2018, the Order of the Unemployment Compensation Board of Review, dated December 4, 2017, is hereby affirmed.

_____

ELLEN CEISLER, Judge